J4HHNarS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                    15 Cr. 109 (NRB)
                                    18 Cr. 754 (NRB)

JOSE TORO NARANJO,

                                    Sentence
               Defendant.

------------------------------x

                                    New York, N.Y.
                                    April 17, 2019
                                    2:46 p.m.

Before:

                     HON. NAOMI REICE BUCHWALD,

                                    District Judge

                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
NEGAR TEKEEI
     Assistant United States Attorney

ALEXEI SCHACHT
     Attorney for Defendant

ALSO PRESENT:  CRISTINA WEISZ, Interpreter (Spanish)

J4HHNarS

1          (Case called)

2          THE LAW CLERK:  Is the government present and ready to

3   proceed?

4          MS. TEKEEI:  Good afternoon, your Honor.  Negar Tekeei

5   on behalf of the United States.

6          THE LAW CLERK:  Is the defendant present and ready to

7   proceed?

8          MR. SCHACHT:  Good afternoon, your Honor.  My name is

9   Alexei Schacht, and I'm here at the table with my client, Jose

10  Toro Naranjo.

11         THE COURT:  All right.  Let me begin this sentencing

12  proceeding by assuring that I've received every document I

13  should have in connection with the sentencing.

14         First, there's the report of the probation office

15  which was filed on March 27 of this year; next, I have the

16  sentencing submission filed on behalf of the defendant, which

17  consists of a memorandum and Exhibits A through E; and then,

18  finally, the government's sentencing submission of April 11.

19         Are there any other documents I should have received

20  in connection with the sentence?

21         MS. TEKEEI:  No, your Honor.

22         MR. SCHACHT:  No, your Honor.

23         THE COURT:  Let me confirm that both parties have

24  received a copy of the presentence report?

25         MS. TEKEEI:  Yes, your Honor.

1          MR. SCHACHT:  Yes.

2          THE COURT:  Mr. Schacht, have you had a chance to

3    review it with your client?

4          MR. SCHACHT:  Yes, we've reviewed it together.

5          THE COURT:  With the assistance of an interpreter?

6          MR. SCHACHT:  Yes, your Honor.

7          THE COURT:  Are there any objections to it?

8          MR. SCHACHT:  Yes, your Honor.  I have two objections

9    which, obviously, you read them already.  They're in the report

10   or in the addendum to the report.  One is kind of a factual

11   objection, which is that I objected to the probation department

12   categorizing my client as an illegal alien when I don't believe

13   he's illegal because he was extradited here.

14         THE COURT:  I think I would agree with that.

15         MR. SCHACHT:  I don't know that that would affect the

16   sentence one way or the other anyway.

17         THE COURT:  He wants to be deported.  He will be.

18         MR. SCHACHT:  Yes, correct.

19         Then my second objection that is more substantive is I

20   objected to my client having received a different guideline

21   level or role or, I should say, my client received no role

22   adjustment and the codefendant received a role adjustment.

23   It's not so much that I'm arguing that my client deserves a

24   minor role; I don't think he does.  My objection is that I

25   don't think either of the two defendants should receive a minor

J4HHNarS

role adjustment.  And so the reality of this case is there's
only two people in the conspiracy because everyone else is an
informant or an undercover police officer, so it's really a
two-person crime, essentially, of my client and the
codefendant.

         While it's true, as the probation department points
out, that my client was initially targeted because he had the
initial conversation with an informant in Colombia who proposed
to introduce my client to some drug buyers who were actually
informants, both defendants have, in my view, equal
responsibility for the crime.  My client was the one who was
initially proposing the deal, but he was unable to do anything
because my client was not able to or didn't have the ability to
send drugs overseas, which is what the crime was supposed to
be, sending drugs from the north coast of Colombia to a port in
Mexico, at which point supposedly the informants then were
going to bring the drugs from a port in Mexico to New York
City.  The codefendant, who's already been sentenced, was the
person who was going to send the drugs from Colombia to Mexico.
My client was the person who was going to supposedly get the
drugs and bring them to or have them brought to the port in
Colombia.

         So I just think to call the other defendant's role
minor, I just think is unheard of, at least in this district
where someone is an essential person in a two-person crime

J4HHNarS

1    who's able to transport drugs overseas.  I've only seen people

2    get minor role adjustments when maybe they're a drug courier or

3    they're doing some small involvement in a larger scheme with

4    many people.  So that's my second objection.

5              THE COURT:  All right.  But just to be clear, for the

6    record, your client did not receive any adjustment for his role

7    in the offense?

8              MR. SCHACHT:  You're correct.

9              THE COURT:  He's at zero?

10             MR. SCHACHT:  He's role neutral.

11             THE COURT:  Right, he's role neutral.

12             MR. SCHACHT:  And I think that's correct.  I'm not

13   saying my client -- I'm saying that similarly situated

14   defendants should be treated the same.  Equal protection clause

15   applies, all kinds of legal concepts apply, and so I just think

16   it's unfair that my client -- I wouldn't have an objection, I

17   couldn't say anything if that defendant had the same guidelines

18   as my client.  I just think it's unfair -- well, the

19   codefendant's definitely getting a lower sentence because he

20   served less time in jail.  I'm not objecting to that, but I'm

21   objecting to the difference in the base offense level that

22   could result in my client, in my opinion, getting a

23   disproportionately higher sentence as a result of what

24   happened.

25             Also, I just object to it on the ground that I don't

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4HHNarS

1    want you to sentence my client as if he's somehow worse, for

2    lack of a better word, than the codefendant.

3          THE COURT:  But still, in the end, your argument is

4    with the guidelines calculation for the other defendant; it is

5    not an argument that the guidelines, as calculated for your

6    client -- viewed exclusively as relates to your client, they're

7    not incorrect?

8          MR. SCHACHT:  You're correct.  The guidelines for my

9    client, in my view, are correct.

10          THE COURT:  OK.  In the end, your argument is really a

11   sentencing argument.

12          MR. SCHACHT:  It may be more of a 3553(a) type of

13   argument, but --

14          THE COURT:  Since I have to confirm whether there is

15   an objection to the guidelines calculation, I just want to be

16   clear, for the record, what your objection is.  I do understand

17   your objection.

18          MR. SCHACHT:  Thank you.  Thank you.

19          THE COURT:  Does the government have any objections to

20   the presentence report?

21          MS. TEKEEI:  No, your Honor.

22          THE COURT:  All right.  Mr. Schacht, why don't I give

23   you back the floor.

24          MR. SCHACHT:  Thank you, your Honor.

25          I first met my client quite a long time ago.  I

J4HHNarS

1   actually met him when he was in jail in Colombia and when he
2   was brought here, though he didn't initially hire me.  He had
3   another lawyer and eventually he hired me, but he interviewed
4   me when he was in jail in Colombia.  I mention that just to say
5   that I've known him for a long time, and I think he's changed
6   over this four-year period that he's been incarcerated.

7          While I'm not the codefendant's lawyer, the same thing
8   might apply to him also.  As you'll recall, both defendants
9   filed certain pretrial motions.  My client ended up feeling
10  that he wanted to change his life and accept responsibility for
11  what he had done, and so he instructed me to call the
12  government, tell them that he would like to plead guilty.  He
13  had a safety valve proffer, and somewhat, I would even say,
14  against my advice he asked me to get a Rule 20 transfer for his
15  Florida case that's also before you now, which he could not
16  otherwise be prosecuted for because that was not part of his
17  extradition.  But he reasoned --
18          THE COURT:  Just a second.  Just to clarify that --
19          MR. SCHACHT:  Yes.
20          THE COURT:  -- you're referring, I think, to the rule
21  of specialty?
22          MR. SCHACHT:  Yes, your Honor.
23          THE COURT:  OK.  Under the rule of specialty, is the
24  objection that can be raised concerning a charge that was not
25  the subject of the original extradition request, is the

J4HHNarS

1    standing under the rule of specialty that of the extraditing

2    country or the defendant?

3              MR. SCHACHT:  Well, I think the standing is the

4    country.

5              THE COURT:  Right.  So if Colombia -- if it was

6    acceptable to Colombia that Mr. Naranjo be prosecuted in the

7    United States on both the New York case and the Florida case,

8    both of those could have gone forward.  Am I correct in

9    understanding that?

10             MR. SCHACHT:  I think, hypothetically, you're correct,

11   but the reality of what actually happened here -- and my client

12   and I made -- we didn't make, our actions caused the prosecutor

13   to have to jump through a million hoops because the government

14   of Colombia and, for that matter, Washington, D.C., were not

15   going to let him be prosecuted.  The reason for the --

16             THE COURT:  Then explain to me if, in fact --

17             MR. SCHACHT:  The reason for the delay --

18             THE COURT:  -- you were in the driver seat, you and

19   Mr. Naranjo, and Mr. Naranjo actually could not have been

20   prosecuted for the Florida case, why would anyone decide to

21   expose themselves to two indictments --

22             MR. SCHACHT:  I'll tell you why.

23             THE COURT:  -- instead of one?

24             MR. SCHACHT:  Two reasons.

25             THE COURT:  Yes.

J4HHNarS

1          MR. SCHACHT:  Reason number one, which I was about to

2     say, is he wants to just get this all behind him.

3          THE COURT:  But --

4          MR. SCHACHT:  I'm telling you why.

5          THE COURT:  All right.

6          MR. SCHACHT:  At the end of this sentence, whatever

7     sentence he gets on the New York case, he's going to be

8     deported, 100 percent.

9          THE COURT:  Right.

10          MR. SCHACHT:  At that time he could be rearrested on

11     the Florida case and re-extradited here.  So there's a -- there

12     was some real potential risk to him.  Who knows whether that

13     was going to happen, but --

14          THE COURT:  Presumably in that circumstance, it would

15     be reasonable to assume that with two different judges in two

16     different jurisdictions sentencing him for two different

17     crimes, that the sentence he would get would likely, adding the

18     two together, more likely to be greater than being sentenced on

19     both cases at one time?

20          MR. SCHACHT:  I would say that probably is more

21     likely.

22          THE COURT:  Right.

23          MR. SCHACHT:  I think it's more likely even with

24     Rule 20.  I think any way you slice it, having two cases,

25     generally results in more time as a sort of general statement.

J4HHNarS

1    I agree with that, your Honor.

2            But I just wanted you to know the procedural history

3    to understand where his head was at.  He wants to be done,

4    obviously for reasons that are practical and also personal.  He

5    wants to spend as little time in jail as possible.  He wants to

6    get this phase of his life behind him, so to speak, and he

7    wants to return.  And he's 55 years old.  He's a year older

8    than I am, and I know if I was him --

9            THE COURT:  Tread carefully here because I'm older

10   than both of you.

11           MR. SCHACHT:  He's in less good shape than me.  I hope

12   I'm not offending him.  But I know that he's tired of all of

13   this.  His experience in prison, especially in Colombia -- the

14   jails here are great compared to what's in Colombia -- was

15   really horrific for him and made him think, I'm getting too old

16   for this, he said to himself.  You never know what's going to

17   happen when someone gets out of jail, is deported.  Anything's

18   possible.  I can't tell the future, but I think he has a

19   possibility, with his personality, which is great, with his

20   work ethic, which is great, which is supported by the documents

21   I've presented to your Honor, one letter in particular that I

22   submitted from his supervisor at the MCC across the street,

23   Mr. Canales, I've never seen a letter like that from MCC or

24   MDC, where they say an inmate is ready to be, essentially,

25   returned to society.  I find, usually for most of my clients,

J4HHNarS

1    it's hard for me to get any letters from the jail, let alone

2    favorable ones.

3         So I would ask you, as you know, I'm asking you to

4    sentence him to 49 months.  Were it not for him having the

5    extra case, the Florida case, I would be asking you to give him

6    the same sentence as his codefendant.  Obviously, he's already

7    done 13 months more than his codefendant.  I know that the

8    probation department feels like, all the factors taken into

9    account, a sentence of about, I think they say, 65 months is

10   what they recommend.  And my argument to your Honor, why I

11   would ask that you give him less than the 65 months that they

12   recommend, or certainly less than the guidelines range, is it's

13   just not necessary for him to be punished more to meet the ends

14   that justice require under 3553(a).  He has been punished quite

15   a lot, and while these are, of course, big drug conspiracies in

16   the sense that the quantities of drugs that are being discussed

17   are large, in neither case were there actually any drugs or any

18   drugs ever -- not only no drugs recovered, there never were any

19   drugs.  No one bought any drugs.  No one transported any drugs.

20        Of course the crime is serious, but the punishment is

21   serious.  He's been in maximum security jail for 49 months.

22   I'm not saying he shouldn't be punished, but the harm to

23   society is, for this crime, comparatively little because no one

24   was poisoned with any drugs, which distinguishes it from other

25   cases even with smaller quantities of drugs where there are

J4HHNarS

1    actually drugs.

2            I don't know what else to say, your Honor.  My client,

3    and I believe him, is chastened by this experience.  I don't

4    say that for every client.  Every client, of course, says I

5    want to get out of jail, but not every client that I have gets

6    a sterling recommendation from the jail and has the love and

7    support of his family that makes his possible reintegration

8    into society something that's more likely to happen rather than

9    less likely out of financial necessity or some other problem,

10   mental health or drug problem or something like that, that

11   might make it more likely that the person would be a

12   recidivist.  So I ask you to sentence him to the time already

13   served.

14           THE COURT:  Well, apart from the difference in the

15   guidelines between your client and his codefendant, your

16   proposal seems to ignore the fact that there is a second case;

17   that the codefendant in the second case got a sentence of 57

18   months.  And if you're talking about a quality or parallelism

19   between codefendants, since he's pled to two crimes, if you

20   added the two sentences up, they'd add up to 93 months.

21           MR. SCHACHT:  Well, I think probably that's how the

22   probation department came up with 65 is they made some kind of

23   semi-arbitrary decision he should be getting more because

24   there's two cases, and this is what, in the probation

25   department's mind, they think is fair.  And I understand that,

J4HHNarS

1    and I can't say if the codefendant gets 57 months, my client,

2    it would be wrong for my client to get the same sentence as a

3    codefendant in that case.  I can't say that to you.  That would

4    just be dishonest of me.  That wouldn't be an injustice.

5              I just think, when someone gets sentenced, when on the

6    calendar, I mean, determines a lot.  If my client had been

7    sentenced three years ago, of course I couldn't ask for time

8    served.  If he was sentenced four years from now, I would

9    certainly also be asking for time served.  But the

10   arbitrariness, I think, of 49, 57, 65, none of these numbers

11   would work an injustice, in my opinion, either way.  I just

12   think, as we stand here today, which happens to be the day of

13   sentence for arbitrary reasons, is 49 months enough for this

14   man?  I think it's enough.  That's not to say that if you gave

15   him 57, that would be an injustice.  I'm just using that number

16   because that's the codefendant.  I can't possibly make that

17   argument.  That would be ridiculous of me.  I just think, with

18   what goes on in court, there is inevitably some arbitrariness

19   to what's happening because I would be asking for the same time

20   served if it was 48 months, 49 months, 52 months.

21             THE COURT:  Your candor's appreciated.

22             MR. SCHACHT:  It just happens that we're here in court

23   today, and I would say the same thing.  He's been punished

24   enough.

25             THE COURT:  Mr. Naranjo, would you like to say

J4HHNarS

1    anything before sentence is imposed?

2              THE DEFENDANT:  Good afternoon, your Honor.

3              THE COURT:  Good afternoon.

4              THE DEFENDANT:  Your Honor, I would like to thank you

5    for reviewing my case and for the time you have dedicated to my

6    case.  I apologize to you and to the United States for the work

7    and damage that I've caused.  The jail conditions have been

8    horrible, especially the one in La Picota.  With the time that

9    I have had to think about this, I want to go back to Colombia

10   without legal problems, and that's why I joined my case in New

11   York with the one from Florida, to be able to start anew.  I

12   will not make another mistake like this one with all the time I

13   have had to think about this.  I'm very sorry about all the

14   sorrow that I have caused to my family.

15              Thank you very much.

16              THE COURT:  Ms. Tekeei, would you like to say

17   anything?

18              MS. TEKEEI:  Unless the Court has any questions, our

19   position is set forth in our submission.  I'm happy to answer

20   any questions the Court may have.

21              THE COURT:  Ms. Tekeei, I do have one question.  In

22   the Southern District New York case, there were two meetings.

23   The first meeting and the second were heavily surveilled.  In

24   between the first meeting and the second meeting, was there any

25   effort to surveil Mr. Naranjo to see if he made any effort to

J4HHNarS

1    obtain any drugs?

2         MS. TEKEEI:  Your Honor, I would have to consult with

3    the agents who were conducting that surveillance to confirm

4    that.  I am not aware of that, but again --

5         THE COURT:  It's not reflected.

6         MS. TEKEEI:  Sure, but I would want to double-check

7    with the agents before answering a factual question like that.

8    I have some of the reports with me, but I don't think they

9    would reflect that.  I'm happy to make a moment and look at

10    them, but I would need to confirm before giving the Court an

11    accurate answer to that question.

12         THE COURT:  All right.  Well, I certainly agree with

13    defense counsel that proportionality in sentencing between

14    codefendants is an extremely important aspect of the imposition

15    of sentence in any situation where there are codefendants.  In

16    this case, there are two cases to consider in terms of

17    proportionality between defendants, the codefendant in this

18    case who received 36 months and who received a minor role

19    adjustment and the codefendant in the Florida case who received

20    a sentence of 57 months.

21         As I mentioned earlier, if you applied the sentences

22    of the codefendants in each of the cases strictly and

23    mathematically, that would make the proportional sentence here

24    to be 93 months because it should be emphasized that the two

25    cases, while both involving narcotics, are different in time

J4HHNarS

1    and different in structure.  They are truly two separate

2    crimes.

3            I think, given the reality that there are two separate

4    and at least potentially very serious crimes, given the

5    quantities that were at least being spoken of, that the

6    defendant's proposal, understandable as it may be, for a

7    sentence of time served is simply inadequate.  And I think in

8    this context, it should be remembered that the purpose of

9    sentencing is sort of twofold:  It's specific deterrence for a

10   defendant and a general deterrence for others who are

11   considering committing similar crimes.  And the clear message

12   has to go back to the country from which Mr. Naranjo came that

13   engaging in large-scale conspiracies to export serious drugs to

14   the United States is not acceptable.

15           Considering the sentences in the two cases,

16   considering, in particular, Mr. Naranjo's role in the Florida

17   case which is more tangible than the case in the Southern

18   District, the sentences imposed upon others, and considering

19   both general and specific deterrence, I impose a sentence of 78

20   months on both the -- in both the cases to be served

21   concurrently.  Given that he will be deported, I will follow

22   the recommendation that there not be a term of supervised

23   release.  There is a mandatory $300 special assessment.  There

24   is no fine.

25           I should advise Mr. Naranjo that if he has not waived

1  his right to appeal in his plea agreement, which I don't happen

2  to have right in front of me, that he has 14 days to appeal the

3  sentences that I've imposed.

4          MR. SCHACHT:  Thank you, your Honor.

5          I just had one additional request, which is that, and

6  I could work this out maybe with the government, but because my

7  client was just extradited on one of his two cases, I'm

8  concerned for him --

9          THE COURT:  Yes, I'm sorry.

10         MR. SCHACHT:  There may still be a warrant or Interpol

11 red notice which, when he gets deported, I don't want that to

12 cause trouble for him.

13         THE COURT:  I forgot to say something that was of

14 importance.

15         MR. SCHACHT:  OK.

16         THE COURT:  Let me just confirm something.  When you

17 say that he served 49 months, are you counting the time in

18 Colombia as well?

19         MR. SCHACHT:  Yes, 49 months.

20         THE COURT:  So I want it to be said on the record that

21 he should get full credit, and it was almost a year, as I

22 recall.

23         MR. SCHACHT:  Yes.

24         THE COURT:  Within a couple days, actually.

25         MR. SCHACHT:  Yes, but he was arrested 49 months --

J4HHNarS

approximately 49 months ago in Colombia.

        THE COURT:  Record should be clear that I want him to
get credit for the time that he spent in custody.

        MR. SCHACHT:  Thank you, your Honor.

        THE COURT:  So you were concerned about a warrant?

        MR. SCHACHT:  Yes.  My concern was just he had two
warrants.  He was extradited on one case.  I don't have access
to Interpol and whether they have a red notice for him.  I just
want to make sure when he gets out of jail, he's not going to
have a warrant for the case.

        THE COURT:  I think you should work that out with the
government.

        MR. SCHACHT:  Thank you.

        THE COURT:  Do you have, by the way, just if you do,
any request as to where he's housed?  Is there any reason that
that's an issue?

        MR. SCHACHT:  The reality is, your Honor, he has no
relatives here in the United States, and so I don't have a
particular request.  Thank you.

        THE COURT:  That's not his brother-in-law?

        MR. SCHACHT:  No, no, he's got no relative.  His
sister visits him from Colombia, but she's not here.

        THE COURT:  OK.  There was someone here earlier that
looked an awful lot like him.

        MR. SCHACHT:  No.

J4HHNarS

1          THE COURT:  All right.  Is there anything further for
2     the government?
3          MS. TEKEEI:  I'm sorry if I missed this, your Honor,
4     but has the Court adopted the PSR, including the offense level
5     and the criminal history category.
6          THE COURT:  Yes, I think that was the purpose of the
7     colloquy earlier.
8          MS. TEKEEI:  Thank you, your Honor.  I just wanted to
9     make sure.
10          THE COURT:  Yes.
11          MS. TEKEEI:  Nothing further from the government, your
12     Honor.
13          THE COURT:  All right.  There are no open counts or
14     anything that we need to --
15          MS. TEKEEI:  No, your Honor.
16          THE COURT:  Very good.  Thank you.
17          (Adjourned)
18
19
20
21
22
23
24
25